NOT FOR PUBLICATION

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

_____
                                                        :
RICHARD CHIPPERO,                       :
                                                        :        Civil Action No. 3:15-cv-6272 (BRM)
                            Petitioner,         :
                                                        :
            v.                                          :                      **OPINION**
                                                        :
ATTORNEY GENERAL OF THE       :
STATE OF NEW JERSEY, *et al.*,      :
                                                        :
                            Respondents.     :
_____:

**MARTINOTTI, DISTRICT JUDGE**

Before this Court is the Petition for Writ of Habeas Corpus ("Petition") pursuant to 28 U.S.C. § 2254 (ECF No. 1) by *pro se* petitioner Richard Chippero ("Chippero") challenging his criminal convictions and sentences imposed by the State of New Jersey for purposeful or knowing murder and second-degree weapon possession for an unlawful purpose. (ECF Nos. 11; 22-5 at 15; and 16 at 15.) Chippero is presently confined at Northern State Prison in Newark, New Jersey. (ECF No. 1 at 1, 20.) Chippero seeks a writ of habeas corpus, a reversal of his convictions, and a judgment of acquittal. (*Id*. at 18.) The Court has considered the Petition, the Respondents' Answer (ECF No. 10), and the record of proceedings in this matter. For the reasons stated below, the Court **DENIES** the Petition in its entirety and **DENIES** a certificate of appealability.

## I.  BACKGROUND

### A.  Factual History

On July 23, 1991, Ermina Rose Tocci was murdered in her North Brunswick mobile home. She had been raped and stabbed in the neck. At the time of the homicide, Chippero resided next door to her. The police initially considered the victim's live-in boyfriend and her brother as

suspects. However, two days after the murder, Kevin McMenemy, a former neighbor of Tocci, told the police that on the day of the murder, he saw a man running from the front of the victim's mobile home into the immediately-adjacent mobile home, which was Chippero's residence. The man was perspiring, but there was no blood on the man or his clothing. (ECF No. 16 at 2.) Based on the information from McMenemy, police investigators sought a search warrant for Chippero's mobile home. After the Honorable Robert P. Figarotta, J.S.C issued the warrant ("Premises Warrant"), Chippero's grandmother let detectives into his mobile home. While some detectives searched Chippero's residence, others went to find him. They located him at a nearby lake. (*Id.* at 3.) One detective approached Chippero and identified himself as a police officer. Chippero acknowledged he was Richard Chippero, waived his Miranda rights, and signed a rights waiver form. After a nine-hour custodial interrogation, Chippero confessed to the crime. Investigators searching his mobile home seized several items, including a pair of Chinese-made T-956 sneakers ("the Sneakers")—one of which had a sole tread pattern that could match a bloody footprint impression left on the victim's back. (*Id.*)

### B. Procedural History

#### 1. <u>First Trial</u>

In Chippero's trial for murder in 1995 (the "First Trial"), he was convicted by a death-qualified jury of capital murder, weapon possession for an unlawful purpose, aggravated sexual assault, and hindering apprehension or prosecution. (ECF Nos. 16 at 3 and 22-8 at 14); *State v. Chippero*, 753 A.2d 701, 707 (N.J. 2000) ("*Chippero I*"). Although the jury found Chippero guilty of capital murder, it did not vote to impose the death penalty. *State v. Chippero*, 987 A.2d 555, 560 (N.J. 2009) ("*Chippero II*"). The court sentenced him to two concurrent life terms with a fifty-five-year parole disqualifier. (ECF Nos. 17-3 at 1 and 22-8 at 14.) On appeal, Chippero challenged the admissibility of his confession but did not raise the validity of the Premises Warrant. (ECF No.

17-3 at 1.) The Appellate Division upheld the conviction and sentence. (ECF No. 11-2 at 4, 24.) The panel accepted, as the factual predicate to the parties' arguments, that Chippero had been subjected to an illegal arrest, but found the passage of time between the arrest and confession broke the causal connection between the two and purged the confession of any taint from the illegal arrest. (ECF No. 11-2 at 11, 19–20.)

However, in a June 30, 2000 written opinion (ECF No. 11-3), the New Jersey Supreme Court reversed Chippero's conviction, concluding: (1) his confession had been impermissibly obtained through the State's arrest of him without probable cause, and (2) therefore the confession should not have been used against him at trial. *Chippero I*, 753 A.2d 701 (N.J. 2000) (holding defendant's confession, obtained after almost nine unbroken hours of custodial interrogation, was not sufficiently attenuated from his illegal arrest; and remanding for a new trial because: "mere passage of time ordinarily does not purge the taint of an illegal arrest," "[defendant] was arrested without probable cause, as the State acknowledged," and "there is an unbroken causal connection between defendant's arrest and confession"). The case was remanded for retrial with a direction that the confession be excluded. *Chippero I*, 753 A.2d at 703, 712–13.

### 2. <u>Second Trial</u>

Prior to the start of the second trial, Chippero moved again to suppress the evidence obtained from the search of his mobile home. He re-raised the arguments advanced prior to the First Trial: (1) the search warrant was not supported by sufficient evidence, adding now that his position had support from *Chippero I*'s determination that the State lacked probable cause to arrest him at the time of the search warrant's execution; and (2) the warrant application was based on information known by the State to be false and misleading. Chippero also raised a third argument— i.e., the Premises Warrant did not authorize the seizure of the Sneakers taken from his bedroom. Although the State argued that Chippero could not resurrect his prior challenge to the Premises

3

Warrant, the court addressed Chippero's challenge on its merits and denied his motion to suppress. *Chippero II*, 987 A.2d at 560–61.

In Chippero's retrial in 2003 ("Second Trial"), the court excluded his confession but admitted evidence seized from his mobile home. *Chippero II*, 987 A.2d at 561; (ECF No. 16 at 5.) In all other respects, the State's proof was substantially similar to that used in the First Trial, including evidence admitted over Chippero's objection that one of the Sneakers had a sole pattern that could have caused the footprint imprint on Tocci's back. (ECF No. 16 at 5.) On March 7, 2003, the jury found Chippero guilty of purposeful or knowing murder, N.J STAT. ANN. § 2C:11-3a(1), and second-degree weapon possession for an unlawful purpose, N.J STAT. ANN § 2C:39-4d. (ECF Nos. 22-5 at 15 and 16 at 5.) The judge merged the convictions and imposed a life-term sentence with a thirty-year parole disqualifier. (ECF No. 16 at 5–6.)

### 3.    Direct Appeal of Second Trial & Collateral Relief Proceedings

Chippero appealed from the second conviction. (ECF Nos. 12-2 and 16 at 6.) One of Chippero's direct-appeal contentions was that "the trial court erred by ruling that the search warrant was valid, compelling reversal of [Chippero's] conviction." (ECF No. 16 at 6.) Basing his argument on *Chippero I*'s premise that the State lacked probable cause to arrest him, Chippero contended the lack of probable cause to arrest him eviscerated the legitimacy of the finding of probable cause to search his home the same day. *See Chippero II*, 987 A.2d at 561. The Appellate Division ordered a telephonic argument and supplemental briefing to address this contention first of the arguments raised in Chippero's direct appeal proceedings. The State argued its *Chippero I* concession of lack of probable cause to arrest was made only to focus the argument on the attenuation issue. The State contended its concession and the New Jersey Supreme Court's remand had to be understood in that context and did not affect the Premises Warrant's validity. (ECF No. 16 at 6.)

On August 9, 2006, the Appellate Decision issued a decision temporarily remanding to permit the development of a record on the issue of "whether the Supreme Court ruling [of lack of probable cause to arrest] affected the determination of probable cause to support a search warrant which issued before the arrest." (ECF Nos. 13-4 at 10 and 16 at 6.) Specifically, the Appellate Division asked the Law Division to develop the contention the State acknowledged an illegal arrest for purposes of the argument before the Supreme Court only. The Appellate Division also asked the judge to make findings of fact and conclusions of law on the issue of the search of Chippero's mobile home. (ECF Nos. 13-4 at 12–13 and 16 at 6–7.)

On September 28, 2006, on remand, the Law Division found "that any concession by the State that probable cause to arrest was lacking was confined to the arguments relating to the admissibility of the confession and did not affect or impact the validity of [the warrant judge's] determination that probable cause existed to search [Chippero's] [mobile home]." (ECF Nos. 15 at 5–6 and 16 at 7.) In short, the Law Division concluded that the validity of the warrant judge's probable cause determination remained unaffected by what later transpired in *Chippero I*.

Chippero reasserted his arguments before the Appellate Division (ECF No. 16 at 7), which held on May 13, 2008, that a finding of probable cause to issue a search warrant for Chippero's home could not be supported in light of *Chippero I*'s statement that his arrest was without probable cause (ECF No. 16 at 7–8, 13–14). Given the Appellate Division's holding that "[t]here is no suggestion in the Supreme Court's [*Chippero I*] opinion or otherwise that the probable cause to arrest, which was lacking, can be distinguished from the probable cause to search" (*id*. at 13), the court did not reach the other issues that Chippero raised on appeal. The Appellate Division reversed Chippero's conviction and remanded for a new trial (*Id*. at 14–15).

The State petitioned for certification from the New Jersey Supreme Court; Chippero

opposed it. (ECF Nos. 16-2 and 16-3.) On December 4, 2008, the Court granted the petition. (ECF No. 16-4.)

On December 29, 2009, in a written opinion (*Chippero II*), the Supreme Court of New Jersey reversed the judgment of the Appellate Division. *Chippero II*, 987 A.2d at 559; (ECF No. 17-3 at 3, 6–7.) The *Chippero II* court remanded to the Appellate Division for consideration of Chippero's arguments that had been unaddressed by state courts on direct appeal ("Remaining Appellate Arguments"). (ECF Nos. 17-3 and 16 at 14–15.[1]) In a December 7, 2010 written opinion, the Appellate Division rejected Chippero's Remaining Appellate Arguments. (ECF No. 17-4.) Chippero sought certification from the New Jersey Supreme Court, which was denied on June 7, 2011. (ECF No. 18.)

On May 5, 2011, Chippero filed a petition for post-conviction relief ("PCR"). (ECF No. 18-1.) On May 23, 2012, Chippero filed an Amended Petition for PCR. (ECF No. 18-3.) On August

---

[1] Besides Chippero's probable cause argument based on *Chippero I*, Chippero raised the following issues on direct appeal:

> [1]The trial court erred by admitting into evidence the fact that a telephone call was made from the Middlesex County Jail to Kevin McMenemy and also erred by allowing a transparency to be used by Doctor DeForest during his testimony. The trial court erred by admitting the autopsy photos as they were unduly prejudicial and not probative. [2] The conduct of the prosecutor exceeded the bounds of proper advocacy [and] denied defendant a fair trial. [3] The convictions of defendant for murder and possession of a weapon for an unlawful purpose are inconsistent with his acquittals on aggravated sexual assault and felony murder. [4] The verdict is against the weight of the evidence and defendant is entitled to a new trial. [5] The charge to the jury in its entirety was confusing, misleading and prejudiced the defendant, and the court improperly responded to jury requests for clarification. [6] The trial court erred by not sequestering the jury. [7] The trial court erred by denying the motion for a judgment of acquittal. [8] The errors committed, in their entirety, denied defendant a fair trial. [9] The sentence imposed was unjust, inappropriate, and manifestly excessive.

(ECF No. 16 at 14–15.)

27, 2012, the PCR trial court denied the PCR petition. (ECF No. 18-7.) On January 31, 2013, Chippero filed a Notice of Appeal of PCR denial. (ECF No. 18-8.) On July 7, 2014, the PCR appellate court denied Chippero's appeal. (ECF No. 19-2.) On July 14, 2014, Chippero sought certification from the New Jersey Supreme Court. (ECF No. 19-3.) On December 16, 2014, Chippero's request was denied. (ECF No. 19-5.)

## II.    PETITION FOR HABEAS RELIEF

Chippero raises seven grounds for relief in his Petition to this Court under 28 U.S.C. § 2254, seeking a writ of habeas corpus, reversal of his conviction, and entry of a judgment of acquittal. (ECF No. 1 at 18.) Ground One of the Petition alleges there was no probable cause to search his residence and *Chippero II* violates his constitutional rights. (*Id*. at 6–7.) Ground Two claims there were errors in the jury charge given at his Second Trial. (*Id*. at 8–9.) Ground Three claims he is actually innocent of the state charges against him and the verdict is against the weight of the evidence. (*Id*. at 9–10.) Ground Four claims an overlay of his T-956 sneakers, used by one of the State's witnesses to explain his opinion, was improperly admitted at trial. (*Id*. at 10–12.) Ground Five claims Chippero received ineffective assistance of counsel ("IAC") during the Second Trial. (*Id*. at 12–13.) Ground Six claims Chippero's appellate counsel rendered IAC. (*Id*. at 13–14.) Ground Seven contends Chippero is entitled to an evidentiary hearing "on this matter." (*Id*. at 14.)

## III.    LEGAL STANDARD

Section 2254(a) permits a court to entertain only claims alleging a person is in state custody "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Chippero has the burden of establishing each claim in the petition. *Eley v. Erickson*, 712 F.3d 837, 846 (3d Cir. 2013). Under 28 U.S.C. § 2254, as amended by the Anti-Terrorism and Effective Death Penalty Act, 28 U.S.C. § 2244 ("AEDPA"), federal courts in habeas corpus cases must give

considerable deference to determinations of the state trial and appellate courts. *See Renico v. Lett*, 559 U.S. 766, 772 (2010).

Section 2254(d) sets the standard for granting or denying a writ of habeas corpus:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Where a state court has adjudicated a petitioner's federal claim on the merits, a federal court:

> [H]as no authority to issue the writ of habeas corpus unless the [state] [c]ourt's decision "was contrary to, or involved an unreasonable application of, clearly established Federal Law, as determined by the Supreme Court of the United States," or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

*Parker v. Matthews*, 567 U.S. 37, 40 (2012) (quoting 28 U.S.C. § 2254(d)). Petitioners carry the burden of proof, and § 2254(d) review is limited to the record that was before the state court that adjudicated the claim on the merits. *Harrington v. Richter*, 562 U.S. 86, 99 (2011). Further:

> For purposes of § 2254(d), a claim has been "adjudicated on the merits in State court proceedings" when a state court has made a decision that (1) finally resolves the claim, and (2) resolves th[at] claim on the basis of its substance, rather than on a procedural, or other, ground.

*Shotts v. Wetzel*, 724 F.3d 364, 375 (3d Cir. 2013) (citing *Thomas v. Horn*, 570 F.3d 105, 115 (3d Cir. 2009)). A court begins the analysis under § 2254(d)(1) by determining the relevant law clearly

established by the Supreme Court. *See Yarborough v. Alvarado*, 541 U.S. 652, 660 (2004). "[C]learly established law for purposes of § 2254(d)(1) includes only the holdings, as opposed to the dicta, of t[he Supreme Court's] decisions," as of the time of the relevant state-court decision. *White v. Woodall*, 134 S. Ct. 1697, 1702 (2014) (quoting *Williams v. Taylor*, 529 U.S. 362, 412 (2000)). A decision is "contrary to" a Supreme Court holding under 28 U.S.C. § 2254(d)(1) if the state court "contradicts the governing law set forth in [the Supreme Court's] cases" or if it "confronts a set of facts that are materially indistinguishable from a decision of th[e Supreme] Court and nevertheless arrives at a [different] result." *Williams*, 529 U.S. at 405–06. Under the "'unreasonable application' clause of § 2254(d)(1), a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from th[e Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id*. at 413. A federal court must confine its examination under 28 U.S.C. § 2254(d)(1) to evidence in the record. *See Cullen v. Pinholster*, 563 U.S. 170, 180–81 (2011).

Where a petitioner seeks habeas relief pursuant to § 2254(d)(2) on the basis of an erroneous factual determination of the state court, two provisions of the AEDPA apply. First, "a determination of a factual issue made by a State court shall be presumed to be correct [and] [t]he applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 29 U.S.C. § 2254(e)(1); *see Miller-El v. Dretke*, 545 U.S. 231, 240 (2005). Second, the AEDPA precludes habeas relief unless the adjudication of the claim "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2).

### A. Exhaustion and Procedural Default

#### 1. <u>Exhaustion</u>

Under the AEDPA, this Court may not grant a writ of habeas corpus under 28 U.S.C. § 2254 unless the petitioner has exhausted the remedies available in the courts of the state or exhaustion is excused under 28 U.S.C. § 2254(b)(1)(B). *See Henderson v. Frank*, 155 F.3d 159, 164 (3d Cir. 1998); *Lambert v. Blackwell*, 134 F.3d 506, 513 (3d Cir. 1997); *Toulson v. Beyer*, 987 F.2d 984 (3d Cir. 1993). To satisfy the exhaustion requirement, "state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). "The burden is on the habeas petitioner to prove exhaustion." *DeFoy v. McCullough*, 393 F.3d 439, 442 (3d Cir. 2005). The exhaustion doctrine mandates that the claim "must have been 'fairly presented' to the state courts." *Bronshtein v. Horn*, 404 F.3d 700, 725 (3d Cir. 2005) (quoting *Picard v. Connor*, 404 U.S. 270, 275 (1971)). "Fair presentation means that a petitioner must present a federal claim's factual and legal substance to the state courts in a manner that puts them on notice that a federal claim is being asserted." *Rainey v. Varner*, 603 F.3d 189, 198 (3d Cir. 2010) (citations and internal quotation marks omitted). In sum, the exhaustion doctrine requires the petitioner to afford the state courts "the opportunity to resolve the federal constitutional issues before he goes to the federal court for habeas relief." *Id.* (quoting *Zicarelli v. Gray*, 543 F.2d 466, 472 (3d Cir. 1976)); *see also Gould v. Ricci*, No. 10-1399-NLH, 2011 WL 6756920, at *2 (D.N.J. Dec. 19, 2011) (explaining the same). The exhaustion doctrine therefore requires a petitioner challenging a New Jersey conviction under § 2254 to have fairly presented each federal ground that is raised in the petition to all three levels of the New Jersey courts—that

is, the Law Division, the Appellate Division, and the New Jersey Supreme Court. *See O'Sullivan*, 526 U.S. 838; *Rose v. Lundy*, 455 U.S. 509 (1982).

## 2. <u>Procedural Default</u>

Even when a petitioner properly exhausts a claim, a federal court may not grant habeas relief if the state court's decision rests on a violation of a state procedural rule. *See Johnson v. Pinchak*, 392 F.3d 551, 556 (3d Cir. 2004). Federal habeas courts generally refuse to hear claims "'defaulted . . . in state court pursuant to an independent and adequate state procedural rule.'" *Johnson v. Lee*, 136 S. Ct. 1802, 1803 (2016) (quoting *Coleman v. Thompson*, 501 U.S. 722, 750 (1991)). "State rules count as 'adequate' if they are 'firmly established and regularly followed.'" *Id.* (quoting *Walker v. Martin*, 562, U.S. 307, 316 (2011)). In New Jersey, the Appellate Division frequently declines to consider claims that were not raised in the trial court first. *See State v. Robinson*, 974 A.2d 1057, 1069 (2009) ("It is a well-settled principle that our appellate courts will decline to consider questions or issues not properly presented to the trial court when an opportunity for such a presentation is available . . . .") (quoting *Nieder v. Royal Indem. Ins. Co.*, 62 N.J. 229, 234 (1973)); *State v. Coleman*, Indictment No. 13-04-0210, 2016 WL 6937921, at *5 (N.J. Super. Ct. App. Div. Nov. 28, 2016); *State v. Dunlap*, Indictment No. 10-07-0983, 2016 WL 207616, at *1 n.3 (N.J. Super. Ct. App. Div. Jan. 19, 2016). If a federal court determines that a claim has been defaulted, it may excuse the default only upon a showing of "cause and prejudice" or a "fundamental miscarriage of justice." *Leyva v. Williams*, 504 F.3d 357, 366 (3d Cir. 2007) (citing *Lines v. Larkins*, 208 F.3d 153, 166 (3d Cir. 2000)).

### 3. <u>Denial on the Merits</u>

To the extent that a petitioner's constitutional claims are unexhausted or procedurally defaulted, a court can nevertheless deny them on the merits under 28 U.S.C. § 2254(b)(2). *See Taylor v. Horn*, 504 F.3d 416, 427 (3d Cir. 2007); *Bronshtein*, 404 F.3d at 728.

## IV. DECISION

### A. Ground One: Claim that the Trial Court Erred in Its Determination that Probable Cause Existed for Police to Search Chippero's Residence

Relying on *Chippero I*'s ruling that there was no probable cause to arrest him (ECF No. 11-3), Chippero argues there was similarly no probable cause to search his residence. He contends that "any items found in [his] residence" should have been excluded from evidence at the Second Trial (ECF Nos. 1 at 6–7 and 7 at 23–28) (referred to as "Search-P.C. Claim")).

During Chippero's direct appeal after the Second Trial, the court itself[2]:

> [R]aised . . . su[a] []sponte . . . [t]he question [whether] the finding in *Chippero I* that a lack—the lack of probable cause regarding defendant's confession mean[s] that there was a lack of probable cause for the search warrant of the defendant's home? If so, then the evidence seized should have been suppressed.[3]

(ECF No. 22-8 at 18.) The Appellate Division remanded for the Law Division trial court to

---

[2] On March 23, 2006, the Appellate Division requested an oral argument:
> [T]o develop an issue not raised by defendant on appeal but which is fundamental to the case[:] whether the Supreme Court's holding, based on a lack of probable cause to arrest, requires suppression of the evidence obtained by a warrant to search defendant's home and bedroom issued before defendant's arrest.

(ECF No. 13-4 at 7–8.)

[3] Chippero's direct appeal arguments about the search of his residence related exclusively to his contention that the warrant itself was defective. (ECF No. 12-2 at 71–75 ("[T]he warrant should have never issued. Moreover, even if the initial issuance of the warrant was legally valid, the officers executed the warrant incorrectly and in an overbroad fashion by seizing the T-956 sneakers, which were not encompassed by the warrant. Thus, the evidence should have been suppressed.").)

"consider[,] [*inter alia*] . . . whether there is a basis for finding probable cause to sustain the search warrant but not the arrest." (ECF No. 13-4 at 3, 12–13.)

On remand, the Law Division ruled: (1) several state courts[4] in Chippero's case had already undertaken a totality of the circumstances analysis regarding probable cause supporting the Premises Warrant, and the Appellate Division's remand had not charged the Law Division with performing that analysis anew (ECF No. 15 at 4–5); and (2) *Chippero I* "has no effect on the probable cause finding on the search warrant," given that Judge Figarotta's determination of probable cause could only be reviewed solely based on what was before him (*Id*. at 6).

Chippero challenged the Law Division's decision, and the Appellate Division "agree[d] with defendant that there was no probable cause to issue a search warrant for defendant's mobile home," reversed his conviction, and remanded for a new trial. (ECF No. 16 at 7.)

The Supreme Court of New Jersey in *Chippero II* reversed the Appellate Division:

> Although the evidence that justifies both an arrest and the issuance of a search warrant must support a finding of probable cause, the two probable cause determinations are not identical. A finding of probable cause as to one does not mean that probable cause as to the other must follow, nor does the lack of one compel a finding of the lack of proof for the other. Thus, evidence that is insufficient to justify the arrest of a person nonetheless may be sufficient to justify the search of a home in connection with the investigation of a crime. Accordingly, nothing in our *Chippero I* holding should be perceived as having compelled the suppression of the evidence seized from defendant's home. Moreover, to the extent that defendant's appeal questions, at this stage of the proceedings, the warrant-issuing

---

[4] The totality of the circumstances analysis for probable cause supporting the Premises Warrant had previously been undertaken by: the Honorable Robert P. Figarotta, J.S.C. who issued the Premises Warrant; the Honorable Barnett E. Hoffman, J.S.C. in the First Trial who denied Chippero's motion to suppress the items obtained in the search of Chippero's residence; the Honorable John S. Kuhlthau, J.S.C. in the First Trial who denied Chippero's motion to suppress admission of his confession; and the Honorable Phillip L. Paley, J.S.C. in the Second Trial who denied Chippero's motion to suppress evidence obtained in the premises search. (ECF Nos. 22-8 at 17–18 and 17-3); *Chippero II*, 987 A.2d at 560.

judge's determination that sufficient facts had been presented to support his finding of probable cause to search 49 Poe Road, we reject the challenge. A search warrant is presumed to be valid and an appellate court's role is not to determine anew whether there was probable cause for issuance of the warrant, but rather, whether there is evidence to support the finding made by the warrant-issuing judge. Here there was and, therefore, we reverse the Appellate Division's contrary determination.

*Chippero II*, 987 A.2d at 558–59; (ECF No. 17-3 at 3, 6–7.)

Chippero did not raise the Search-P.C. Claim during PCR proceedings. (ECF Nos. 18-1 at 6; 18-3 at 2; and 22-8 at 28–32.) To the extent Chippero's Search-P.C. Claim was not fairly presented to all three levels of the state courts and is therefore unexhausted, this Court can nevertheless deny it on the merits under 28 U.S.C. § 2254(b)(2). *See Taylor*, 504 F.3d at 427; *Bronshtein*, 404 F.3d at 728. In other words, this Court is free to deny Ground One on the merits.

*Stone v. Powell*, 428 U.S. 465 (1976), forecloses Chippero's ability to raise on habeas a Fourth Amendment violation. Under *Stone*, Fourth Amendment claims are not cognizable on habeas review unless state courts denied petitioner an opportunity for a full and fair litigation of the claims. 428 U.S. at 494–95, 495 n. 37 ("[W]here the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial."); *see also Gilmore v. Marks,* 799 F.2d 51, 57 (3d Cir. 1986); *Reininger v. Attorney Gen. of N.J*, No. 14-5486, 2018 WL 3617962, at *9 (D.N.J. July 30, 2018). Chippero does not argue that he did not receive full and fair consideration of the Search-P.C. Claim. Indeed, the Appellate Division itself raised it sua sponte during direct appeal, and the Search-P.c. issue was subsequently adjudicated by three more courts thereafter.

Therefore, federal habeas review is unavailable for Chippero's Search-P.C. Claim because it is barred by *Stone*.

Accordingly, Ground One of the Petition is **DENIED**.

**B. Ground Two: Challenges to Jury Charges**

In Ground Two, Chippero asserts the following challenges to the jury charges at the Second Trial: (1) the trial judge incorrectly refused to give a reckless manslaughter charge ("Lesser-Included Offense Charge Claim"); (2) the charges on credibility and motive "went beyond the model charges and were improper" ("Credibility Charge Claim"); (3) the motive charge "was unconstitutionally misleading" ("Motive Charge Claim"); (4) the "trial judge improperly used the term 'perpetrator' in discussions before the jury" ("Word Choice Claim"); (5) the "extra phrase regarding lack of guilt" in the search warrant charge was improper ("Search Warrant Charge Claim"); (6) the charge regarding testimony read-back "was confusing, misleading and prejudicial" ("Testimony Read-Back Claim"); and (7) "the charge to the jury in its entirety was confusing, misleading and prejudic[ial]" ("Entire Charge Claim") (all seven claims are collectively referred to as "the Jury Charge Claims"). (ECF No. 1 at 8.)

Chippero raised the Jury Charge Claims on direct appeal after the Second Trial. (ECF No. 16 at 14–15.) In its May 13, 2008 opinion, the Appellate Division did not reach these claims because it reversed and remanded for a new trial on other grounds. (*Id.*) On December 7, 2010, following reversal of the Appellate Division decision and remand from the New Jersey Supreme Court, the Appellate Division on rejected the Jury Charge Claims.

For the reasons explained below, this Court finds that the Jury Charge Claims do not merit habeas relief.

The paramount question on habeas review of a jury instruction is "whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process," *Estelle v. McGuire,* 502 U.S. 62, 73 (1991), and "not merely whether the instruction is undesirable,

erroneous, or even universally condemned." *Jacobs v. Horn*, 395 F.3d 92, 111 (3d Cir. 2005) (citations omitted). "[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." *Estelle,* 502 U.S. at 67–68. "Questions related to jury charges are normally matters of state law and are not cognizable in federal habeas review." *Paulino v. Ortiz,* No. 03-4463, 2005 WL 2922369, at *4 (D.N.J. Nov. 4, 2005). A habeas claim will lie only where "the jury instruction is so prejudicial as to amount to a violation of due process and fundamental fairness." *Id.* at *4 (quotations omitted). To show that a jury instruction so infected the trial:

> [A] habeas petitioner must demonstrate *both* (1) that the instruction contained some ambiguity, inconsistency, or deficiency, *and* (2) that there was a reasonable likelihood that the jury applied the instruction in a way that relieved the State of its burden of proving every element of the crime beyond a reasonable doubt.

*Williams v. Beard,* 637 F.3d 195, 223 (3d Cir. 2011) (emphasis added) (quoting *Waddington v. Sarausad,* 555 U.S. 179, 189 (2009)) (internal quotation marks omitted). "An omission, or an incomplete instruction is less likely to be prejudicial than a misstatement of the law." *Henderson v. Kibbe,* 431 U.S. 145, 155 (1977).

Chippero has not made the requisite showings for habeas relief on any of his seven Jury Charge Claims, for the reasons explained below.

### 1. <u>Credibility Charge Claim, Search Warrant Claim, and Word Choice Claim</u>

As to the Credibility Charge Claim, the Appellate Division found the trial judge's credibility instructions "were sufficient to explain the jury's proper role in examining prior inconsistent statements [and] adequately informed the jury of its function in assessing and weighing credibility":

[T]he judge first acknowledged that it was the jury's province to judge the credibility of witnesses. Discussing the use of prior inconsistent statements, the judge instructed that witnesses were testifying as to events that happened almost twelve years earlier. He said, "don't judge witness's testimony more harshly than you would judge your own testimony" because it is hard to remember what happened that long ago.

After the charge, but before deliberations, defendant objected. The judge then instructed the jury that: "when you consider any inconsistencies you should first consider the extent to which any inconsistency is really material or important to the issues in this case. And once you reach that determination, you may then consider all of the factors surrounding the inconsistent statements. It is for you to decide the ultimate credibility of the witnesses and whether a prior statement that was made, no matter when or how long ago it was made is more credible or less credible."

(ECF No. 17-4 at 5–6.)

As to the Search Warrant Claim, the Appellate Division ruled:

The judge instructed the jury that "the fact that a search warrant was issued is not evidence of guilt . . . [nor] a lack of guilt. A search warrant is nothing more than an order from a judge allowing a search of a particular place for particular items." Defendant challenges this instruction, but does not explain the basis for his objection. He argues that the purpose of this charge is to "negate any improper inference of guilt" and the extra phrase, regarding lack of guilt, "undermined the salutary purpose of those charges."

We conclude that the instruction did not prejudice defendant. The judge merely neutralized the evidence about the search warrant.

(ECF No. 17-4 at 7–8.)

As to the Word Choice Claim, the Appellate Division decided:

The judge used the term "perpetrator" in reviewing McMenemy's testimony. Defendant argues that this effectively negated defendant's alternate theory that even if McMenemy did see defendant walking into his home, it did not mean that he committed the murder.

> We perceive no error with respect to the use of the neutral term "perpetrator" by the judge. That term does not translate into "the defendant in this case."

(ECF No. 17-4 at 7.)

As to the Credibility Charge Claim, Search Warrant Claim, and Word Choice Claim, the Petition and supporting brief argue, at most, a violation of state evidentiary rules. (ECF Nos. 1 at 6–7 and 7 at 34–35.) This is insufficient to warrant habeas relief. Chippero must instead demonstrate a violation of federal due process, as clearly established by precedent of the United States Supreme Court. He has not made this requisite showing for any of these three claims.

Moreover, the Credibility Charge Claim, Search Warrant Claim, and Word Choice Claim do not demonstrate ambiguity, inconsistency, or deficiency in the given charges. *Williams,* 637 F.3d at 223 (citing *Waddington,* 555 U.S. at 189).

For example, the trial court explained at length to the jurors what their duty to weigh witness credibility entailed, including "all of the factors surrounding inconsistent statements" and "[t]he circumstances under which the statement may have been given years ago." (ECF No. 22-1 at 83.) The trial court instructed the jury "[i]t is for you to decide the ultimate credibility of the witnesses and whether a prior statement that was made is more credible or less credible." (*Id.*) The Appellate Division reasoned that Chippero therefore was not deprived of a fair trial by the trial court's explanation of the jury's proper function in weighing witness credibility and examining prior inconsistent statements. This Court agrees. Chippero has not demonstrated any ambiguity, inconsistency, or deficiency in the credibility charge.

With respect to the Search Warrant Claim, Chippero has not shown that the trial court's instruction was ambiguous or deficient. The trial court's statements to the jury were correct that "[a] search warrant is nothing more than an order from a judge allowing a search of a particular

place for particular items" and "the fact that a search warrant was issued is not evidence of guilt . . . [nor] a lack of guilt." (ECF No. 22-1 at 60.) The Appellate Division observed that the trial judge's statement "merely neutralized the evidence about the search warrant." (ECF No. 17-4 at 7–8.) As Chippero did on his direct appeal, he again on habeas "does not explain [any] basis for his objection" (*id*. at 8) to the judge's search warrant comments, much less one that suggests constitutional implications.

With respect to the Word Choice Claim, this Court's review of the record suggests that Chippero's challenge appears to focus on this statement the trial court made to the jury:

> I believe that you heard testimony from Mr. McMenemy . . . about observations which he made on Poe Road at about 2:30 in afternoon on July 23rd, 1991. It is your function to determine whether this or any other identification is reliable and believable or whether it is based on a mistake or for any reason it is not worthy of belief. You must decide whether it is sufficiently reliable evidence upon which to conclude that it was Mr. Chippero who was observed at the time and, therefore, Mr. Chippero who committed the offenses charged against him. In deciding what weight, if any, to give to the identification testimony you should evaluate the testimony of the witness in light of the factors for considering credibility that I have outlined for you already. In addition, you should consider the following: The opportunity of the witness to view the perpetrator. The degree of attention of the witness when the viewing occurred."

(ECF No. 22-1 at 62.) Chippero had argued on direct appeal that use of the word "perpetrator" negated his alternate defense theory that, even if McMenemy did see him walking into his home on July 23, 1991, it did not mean he committed the murder. (ECF No. 17-4 at 7.) Chippero's habeas challenge to the trial court's use of the term "perpetrator" when reviewing McMenemy's testimony invites this Court to evaluate that term out of context. This Court declines to do.

The Appellate Division could have reasonably decided the "perpetrator" term "does not translate into 'the defendant in this case.'" (*Id*.) The trial court's use of the term was made within the larger context of its charge to the jury that "[f]or [you] to find Mr. Chippero guilty, the State

must prove beyond a reasonable doubt that it was he who committed a crime." (ECF No. 22-1 at 62.) The trial court discussed McMenemy's testimony as an "example" (*id.*) within this larger context of the jury's duty to weigh witness testimony identifying the perpetrator of the crime, whether it was Chippero or not. Chippero has not demonstrated any unconstitutional ambiguity, inconsistency, or deficiency in the given charge as to his Search Warrant Claim.

In sum, Chippero has not shown that the state courts ignored, misapprehended, or arrived at a conclusion that was contrary to clearly established United States Supreme Court precedent which is on point regarding the issues raised by Chippero's Credibility Charge Claim, Search Warrant Claim, and Word Choice Claim. *See Buggs v. Tennis*, 298 F. App'x 198, 199 (3d Cir. 2008) (federal courts cannot grant habeas relief unless there is United States Supreme Court precedent that is on point, which the state courts ignored or misapprehended) (citing *Williams*, 529 U.S. at 406).

### 2. <u>Motive Charge Claim</u>

After itemizing to the jury each element of purposeful or knowing murder that the State had to prove beyond a reasonable doubt in order for the jury to find Chippero guilty (ECF No. 22-1 at 63–64), the trial court stated to the jury:

> The State, however, is not required to prove a motive. If the State has proved those essential elements of the offense beyond a reasonable doubt that he caused death or serious bodily injury resulting in death and that he acted purposely or knowingly, you must find Mr. Chippero guilty of murder, regardless of his motive or lack of motive. But, if the State has proved a motive or presented proof as to a motive, you may consider that insofar as it gives meaning to other circumstances. On the other hand, you may consider the absence of motive in weighing whether or not Mr. Chippero is guilty of the crime charged.

(*Id.* at 64). The trial judge told the jury that, *if* it found proof as to motive, the jury *could* consider motive for purposes of informing its evaluation of other circumstances. There is nothing in the

record suggesting that the jury applied this instruction so as to find Chippero guilty of murder without proof of one or more of that crime's elements, nor has Chippero explained how or why the motive charge "was unconstitutionally misleading." (ECF No. 1 at 8.)

The Appellate Division found Chippero's Motive Charge Claim was unsupported:

> The judge instructed that the State was not obligated to prove a motive; and, that if the State has proved all of the elements of the offense, the jury must find defendant guilty "regardless of his motive or lack of motive. But, . . . you may consider [evidence of motive] insofar as it gives meaning to other circumstances. On the other hand, you may consider the absence of motive in weighing whether or not [defendant] is guilty of the crime charged." Defendant challenges this instruction without explaining why the instruction was misleading. Nor does defendant cite any resulting prejudice from the charge.

(ECF No. 17-4 at 7.)

Similar to Chippero's Credibility Charge Claim, Search Warrant Claim, and Word Choice Claim, his Motive Charge Claim appears to advance, at most, a violation of New Jersey procedural or evidentiary rules—which is insufficient to merit habeas relief. The Petition does not demonstrate a violation of federal due process, as clearly established by United States Supreme Court precedent. In fact, Chippero does not, in the first instance, show United States Supreme Court precedent that is on point with the issues raised by the Motive Charge Claim, which the state courts ignored or misapprehended. Federal habeas courts cannot grant relief in such instances. *Buggs*, 298 F. App'x at 199 (internal citations omitted). In any event, the Motive Charge Claim does not show a constitutional violation from "a reasonable likelihood that the jury applied the instruction in a way that relieved the State of its burden of proving every element of the crime beyond a reasonable doubt." *Williams,* 637 F.3d at 223.

**3.** **Testimony Read-Back Claim, Lesser-Included Offense Claim, and Entire Charge Claim**

First, as to the Testimony Read-Back Claim, Chippero had argued on direct appeal that "the judge erred by responding to the jury's request for a read-back of the testimony of Mary Giaquinto, Leonard Falabelda and Barbara Traube, 'regarding the time that [defendant] allegedly approached them, and what he said to them.'" (ECF No. 17-4 at 9.[5]) Before the read-back, Chippero asked for Giaquinto's testimony to be read in its entirety. The prosecutor objected. The judge ruled that only the requested portion would be read. He noted that the jury nodded when asked if they wanted only the selected portions read to them. Chippero pressed his objection and requested a mistrial, which was denied. After the selected portions were read to the jury, Chippero again moved for a mistrial and later raised the issue in his motion for a new trial. (ECF Nos. 17-4 at 9–10 and 22-5 at 3–9.) On direct appeal, the Appellate Division found:

> It is firmly established that when a jury requests a clarification, the trial court is obligated to clear the confusion. The judge is also required to ascertain the meaning of the jury's request. Here, the judge did not abuse his discretion when he directed that only the requested portion of the testimony be read.

(ECF No. 17-4 at 10.)

---

[5] Mary Giaquinto, who lived at the trailer park, had testified that she went outside when she saw police lights on July 23, 1991. Giaquinto was speaking to another neighbor when a male voice behind her said "someone got stabbed. Some woman got stabbed." The man disappeared. Giaquinto could not identify the man, but he was wearing a white t-shirt. Later that night, she saw the man sitting in a lounge chair. She did not know the man's name, but she saw him once after that night riding around the block on his bicycle.

Leonard Falabella and his wife Barbara Traube lived across the street from Tocci. Falabella knew Chippero. When he and his wife saw the police vehicles, they went outside with their dogs. About a half hour after the police arrived, Chippero came across the street to play with the dogs. Chippero told Falabella and Traube that the woman across the street had been stabbed. Falabella asked Chippero how he knew that. He replied that he had heard it over the police scanner. Traube corroborated her husband's testimony. According to her, Chippero told them that around 11:00 p.m. he had heard on the police scanner that Tocci had been "found in a puddle of blood, stabbed." (ECF No. 17-4 at 9–10.)

Chippero has not demonstrated how the Appellate Division's decision regarding the trial judge's testimony read-back was contrary to or an unreasonable application of United States Supreme Court precedent. Chippero has cited no United States Supreme Court decision, and this Court has not located any, addressing a criminal defendant's constitutional right to the scope of read-back presented to a jury or delineating the manner in which a trial court should respond to a jury's request to have testimony read back for them. *See Beltran v. Hastings*, No. 12-2042, 2014 WL 1665727, at *23 (D.N.J. Apr. 24, 2014) (finding no Supreme Court precedent "delineating the manner in which a trial court should respond to a jury's request to have certain testimony read or played back for them"); *see also Hilson v. Junious*, No. 1-0072-MWF, 2013 WL 5574989, at *17 (C.D. Cal. Oct. 8, 2013) (finding no Supreme Court precedent that "squarely addresses whether a criminal defendant has a constitutional right to have testimony read back to the jury"). In the absence of United States Supreme Court precedent on this issue, this Court cannot conclude that the Appellate Division's decision regarding testimony read-back was contrary to or an unreasonable application of United States Supreme Court precedent.

Accordingly, to prevail on his Testimony Read-Back Claim, Chippero must establish that the state court's actions violated the "'fundamental fairness' essential to justice." *Marra v. Larkins*, 46 F. App'x 83, 87 (3d Cir. 2002) (citing *Donnelly v. DeChristoforo*, 416 U.S. 637, 642 (1974)). Chippero has not made such a showing.

In this jurisdiction, the Third Circuit has held a trial judge has broad discretion in determining whether to accede to a jury's request for reading of testimony. *United States v. Zarintash,* 736 F.2d 66, 69–70 (3d Cir. 1984) (citing *United States v. Chrzanowski,* 502 F.2d 573, 577 (3d Cir. 1974); *United States v. Rabb,* 453 F.2d 1012 (3d Cir. 1971); *United States v. Chicarelli,* 445 F.2d 1111 (3d Cir. 1971)). This discretion is premised on two considerations: (1)

requests to read testimony may slow the trial where the relevant testimony is lengthy; and (2) reading only a portion of the testimony may cause the jury to give that portion undue emphasis. *Zarintash,* 736 F.2d at 70 (citing *Rabb,* 453 F.2d at 1013–14). In this case: (1) the judge reasonably could have sought to avoid the potentially significant delays that would accompany reading back the entirety of the testimony given by Giaquinto, Traube, and Falabelda; and (2) the trial judge's response—tailored to the jury's specific requests of particular portions of testimony—ensured that no particular piece of testimony was given undue emphasis. This was important, given that the judge had instructed the jury that their recollection of the testimony controlled. Furthermore, the trial judge reasonably could have determined that a read-back of all three witnesses' testimony would have been at the least very cumbersome and at the worst entirely impracticable. A full read-back of all three also posed a possibility of unequal compliance with the other jury excerpt read-back requests for witnesses other than that of Giaquinto, Falabelda, and Traube. This Court's review of the record reveals nothing to indicate that the trial judge abused his discretion in his handling of the jury request for transcripts of testimony or that his read-back decision violated fundamental fairness. Rather, the record suggests he dealt with the jury's request in a manner that expedited a fair and reasoned response to them. The Appellate Division's affirmance of the trial court's decision did not violate Chippero's constitutional right to fundamental fairness.

Second, Chippero's Lesser-Included Offense Claim also fails to warrant granting federal habeas relief. During the jury charge conference, Chippero asked for a reckless manslaughter charge, arguing that the element of recklessness or intent was a jury question. The State objected. Focusing on the number of stab wounds to the victim's neck, the judge ruled that there was no

rational basis to charge the jury on aggravated or reckless manslaughter.[6] (ECF No. 22 at 12–13.) The Appellate Division ruled that the trial court correctly determined that the trial record, viewed as a whole, did not support giving the lesser-included charges:

> At the charge conference, defendant asked for a reckless manslaughter charge, arguing that the element of recklessness or intent was a jury question. The State objected. Focusing on the number of stab wounds to Tocci's neck, the judge ruled that there was no rational basis to charge the jury on aggravated or reckless manslaughter . . . On appeal, defendant does not explain the basis for his argument. Instead, he cites to two civil, out-of-state cases that discuss circumstantial evidence and speculation as support for the requested charge . . . Based on a careful review of the briefs and the evidence judged against the applicable standards, we conclude that the judge correctly determined that the trial record, viewed as a whole, did not support giving to the jury the lesser-included charges as aggravated and reckless manslaughter. No evidence was presented on the state of mind of the killer.

(ECF No. 17-4 at 2–5.)

Chippero has not shown that the Appellate Division's affirmance of the trial court is either contrary to, or an unreasonable application of, United States Supreme Court precedent.

A habeas petitioner who challenges state jury instructions must "point to a federal requirement that jury instructions on the elements of an offense . . . must include particular provisions" or demonstrate that the jury "instructions deprived him of a defense which federal law provided to him." *Johnson v. Rosemeyer,* 117 F.3d 104, 110 (3d Cir. 1997). However, the failure to give the lesser-included crime instruction for reckless manslaughter in Chippero's case here was not contrary to, or an unreasonable application of United States Supreme Court precedent because: (1) the Supreme Court has never held the Due Process Clause guarantees the right of a defendant

---

[6] New Jersey law provides that an instruction as to a lesser offense is warranted only where the facts provide a rational basis for such a conviction. *See* N.J. Stat. Ann. § 2C:1-8 ("The court shall not charge the jury with respect to an included offense unless there is a rational basis for a verdict convicting the defendant of the included offense.").

to have the jury instructed on a lesser-included offense in a non-capital case, such as Chippero's Second Trial here; and (2) in any event, a lesser-included offense instruction is constitutionally required in a capital case only when warranted by the evidence, and the New Jersey courts reasonably found as to Chippero's non-capital Second Trial that the requested lesser-included offense charges were not supported by the evidence.

In *Beck v. Alabama,* 447 U.S. at 627, the United States Supreme Court held the death penalty may not be imposed "when the jury was not permitted to consider a verdict of guilt of a lesser-included non-capital offense, and when the evidence would have supported such a verdict." The *Beck* Court ruled, in a capital case, a trial court must give a requested charge on a lesser included offense where it is supported by the evidence. 447 U.S. at 635. The *Beck* Court expressly limited its holding to capital cases. *Id.* at 638 n.14 (refusing to "decide whether the Due Process Clause would require the giving of such instructions in a noncapital case"). In *Vujosevic v. Rafferty*, 844 F.2d 1023, 1028 n.1 (3d Cir. 1988), the Third Circuit interpreted *Beck* to require instructions for any lesser-included offense rationally supported by the evidence in any criminal case (not just capital murder cases). However, since *Vujosevic* was decided, questions have been raised as to whether *Vujosevic* is consistent with current United States Supreme Court precedent. *See*, *e.g.*, *Scott v. Bartkowski*, No. 11-CV-3365, 2013 WL 4537651, at *13 (D.N.J. Aug. 27, 2013) (holding "[a]s this is not a capital case, petitioner fails to show the denial of this claim was an unreasonable application of clearly established federal law as the Supreme Court has not recognized that he has a due process right to jury instructions on lesser included offenses"); *Nesmith v. Cathel*, No. 05-CV-4069, 2007 WL 2247899, at *7 (D.N.J. Aug. 7, 2007) (holding "the Supreme Court has never held that the Due Process Clause guarantees the right of a defendant to have the jury instructed on a lesser included offense in a non-capital case"); *Geschwendt v. Ryan*, 967 F.2d 87, 884–85, n.13

(3d Cir. 1992) (en banc) (questioning whether *Vujosevic* is "still good law"); *see also Hopkins v. Reeves*, 524 U.S. 88, 97 (1998) ("Almost all states provide instructions only on those offenses that have been deemed to constitute lesser included offenses of the charged crime. We have never suggested that the Constitution requires anything more."); *Hopper v. Evans,* 456 U.S. 605, 611 (1982) (holding due process does not require lesser-included offense instruction in death penalty case where there is no lesser-included offense under state law).

Here, there is no indication in the habeas record before this Court that Chippero's second trial was a capital case. The jury at that second trial found him guilty of purposeful or knowing murder, N.J. Stat. Ann. § 2C:11-3a(1), and weapon possession, N.J. Stat. Ann. § 2C:39-4(d). *See* (ECF Nos. 16 at 5 and 22-5 at 15.) The New Jersey courts found the evidence at that second proceeding did not rationally support any lesser-included offense of reckless manslaughter. Any error of state law regarding this determination cannot form the basis for habeas relief, as habeas relief is not available for violations of state law. *See Estelle v. McGuire,* 502 U.S. 62, 71–72 (1991) ("[T]he fact that the instruction was allegedly incorrect under state law is not a basis for habeas relief."); *Engle v. Isaac,* 456 U.S. 107, 119 (1982) ("Insofar as respondents simply challenge the correctness of the self-defense instructions under Ohio law, they allege no deprivation of federal rights and may not obtain habeas relief."). In addition, the finding that the evidence did not support a reckless manslaughter instruction is entitled to a presumption of correctness under 28 U.S.C. § 2254(e)(1), and Chippero has not rebutted this presumption of correctness by clear and convincing evidence. Habeas relief is not warranted on this ground because the failure to instruct on a lesser-included offense does not violate due process where such an instruction is not supported by the evidence, and the New Jersey courts' determination that the evidence did not warrant a

reckless manslaughter instruction must be presumed to be correct. *See Kontakis v. Beyer,* 19 F.3d 110, 119 (3d Cir. 1994).

Furthermore, even if *Vujosevic* was applicable here, the state courts reasonably found that a reckless manslaughter charge was not supported by the evidence. The Appellate Division determined that no evidence was presented at trial on the killer's state of mind (ECF No. 17-4 at 4), and Chippero cites to no such evidence of such in his habeas papers (ECF Nos. 1 and 7). Chippero has not demonstrated a factual or legal basis to request the lesser-included offense charges. Such charges were *not* supported by the evidence. Therefore, the Appellate Division's affirmance of the trial court is neither contrary to, nor an unreasonable application of, United States Supreme Court law.

To be sure, the United States Supreme Court has stated the failure to give an instruction may violate due process where the error "so infected the entire trial that the resulting conviction violate[d] due process." *Henderson v. Kibbe,* 431 U.S. 145, 154 (1997) (citation omitted). However, this Court agrees with the New Jersey courts' finding, if believed, the evidence against Chippero did not provide a rational basis for a reckless manslaughter instruction. Accordingly, Chippero has not shown there was an error that infected the entire trial and violated due process, and he is not entitled to habeas relief.

Finally, Chippero's Entire Charge Claim also fails the habeas standard of review. The Appellate Division ruled that the jury charge as a whole met the constitutional standard:

> [W]e find no support for the allegation that the entire charge was confusing, misleading and prejudicial. No party is entitled to have the jury charged in his or her own words. All that is necessary is that the charge as a whole be accurate. Read as a whole, the charge given here met this standard.

(ECF No. 17-4 at 11.) This Court agrees.

None of the charges relieved the State of proving any element of any of the crimes for which Chippero stood trial. Rather, the trial court instructed the jury that the State must prove beyond a reasonable doubt each element of each charged offense. (ECF No. 22-1 at 54, 56–59, 61–63.) Chippero fails to demonstrate that any specific charge, or failure to give any specific charge, deprived him of a defense that federal law provided to him. *See Rosemeyer*, 117 F.3d at 110. The charges here comported with the law, as discussed at length *supra* in this Opinion. Moreover, the model jury charges Chippero references in Ground Two, merely inform trial courts on particular issues and are typically provided as a guide for trial courts. They are not required instructions. Furthermore, the Court finds that the instructions as given to the jury did not affect the trial's outcome, as there was sufficient evidence at trial to support Chippero's conviction. *See*, *e.g.*, (ECF No. 22-1 at 47–50.)

Given the content of the charge as a whole, Chippero has not shown that any specific instructions, whether individually or collectively, so infected the trial with unfairness as to amount to a violation of due process. *See*, *e.g.*, *Paulino*, 2005 WL 2922369, at *3. Chippero's claims are baseless, and he has not shown a federal constitutional deprivation entitling him to habeas relief. "[E]rrors of state law cannot be repackaged as federal errors simply by citing the Due Process Clause." *Rosemeyer*, 117 F.3d at 110. There is no basis for this Court to conclude that the Appellate Division's rulings were contrary to, or an unreasonable application of, United States Supreme Court precedent.

Accordingly, the Jury Charge Claims fail on the merits and Ground Two is **DENIED**.

### C. Ground Three: Claim of Actual Innocence

In Ground Three, Chippero claims he is "actually innocent of the charges against [me] and the verdict is against the weight of the evidence thereby denying [me] a fair trial and due process of law." (ECF No. 1 at 9.) This Court reasonably construes Ground Three to assert two separate

claims: actual innocence and weight of the evidence.

On direct appeal in state court, Chippero argued the trial court erred in denying his motion for a judgment of acquittal at the close of the State's case. (ECF No. 12-2 at 83–84.) The New Jersey Appellate Division rejected this claim. (ECF No. 17-4 at 28.) Chippero raised this issue in his petition for certification to the New Jersey Supreme Court (ECF No. 17-5), which that Court denied (ECF No. 18).

Chippero then raised an actual innocence claim in his PCR petition (ECF Nos. 18-1 at 6 ("Defendant is actually innocent of the crimes of which he was convicted.") and 19 at 10), which the PCR trial court rejected (ECF No. 22-8 at 47 ("The defendant has had extensive appeals and trials. Defendant was found guilty by a jury of his peers and as such, this Court finds that any argument relative to the reconsideration of that evidence, the rehashing of that evidence, without any corroboration, in addition to what is already in the record, is just bald-faced assertions, and as our courts have concluded in that language, calling it bald-faced assertion, to be without merit.")). Chippero appealed denial of PCR only as to IAC claims, arguing the PCR trial court improperly denied his petition without an evidentiary hearing. (ECF No. 19 at 13, 19–38.) The PCR appellate court rejected his claim. (ECF No. 19-2 at 6–8.) Chippero filed a petition for certification (ECF No. 19-3), which was denied (ECF No. 19-5).

### 1. <u>Actual Innocence Claim</u>

Currently, the United States Supreme Court treats actual innocence as a gateway for consideration of procedurally defaulted claims. *See McQuiggin*, 133 S. Ct. 1924; *Schlup v. Delo*, 513 U.S. 298, 327–29 (1995) (requiring a showing "that it is more likely than not that no reasonable juror would have convicted [the petitioner] in the light of the new evidence"). The Supreme Court has not yet recognized the existence of a freestanding claim of actual innocence. *See McQuiggin*,

133 S. Ct. at 1931; *cf. In re Davis*, 557 U.S. 952 (2009); *see also Wright v. Superintendent Somerset SCI*, 601 F. App'x 115, 119 (3d Cir. 2015), *cert. denied sub nom. Wright v. Wingard*, 136 S. Ct. 241, 193 L. Ed. 2d 180 (2015), *reh'g denied*, 136 S.Ct. 580, 193 L. Ed. 2d 462 (2015).

Here, even assuming that a freestanding claim of actual innocence is cognizable under § 2254, Chippero failed to exhaust such claim because he did not present it to the PCR appellate court. (ECF No. 19 at 13, 19–38.) However, this Court is free to review and reject such claim on the merits under 28 U.S.C. § 2254(b)(2), which this Court will now proceed to do for the following reasons. *See Taylor*, 504 F.3d at 427; *Bronshtein*, 404 F.3d at 728.

Chippero provides no new evidence whatsoever of his actual innocence, much less evidence that meets the "extraordinarily high" standard of proof required for such a claim. Furthermore, Chippero does not meet the standard for a gateway claim under *Schlup*, 513 U.S. at 327–29, which requires a showing "that it is more likely than not that no reasonable juror would have convicted [the petitioner] in the light of the new evidence." *See also Hubbard v. Pinchak*, 378 F.3d 333, 339 (3d Cir. 2004) (internal quotation marks omitted). In *Jackson v. Virginia*, 443 U.S. 307 (1979), the United States Supreme Court ruled that a habeas court can review a claim that the evidence produced at a state trial was insufficient to convict petitioner beyond a reasonable doubt, but the relevant question for the federal court is whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found the essential elements on the crime beyond a reasonable doubt. *Id*. at 318–19.

Having reviewed the relevant record, the Court finds the PCR trial court did not err in rejecting Chippero's actual innocence claim. Chippero has not presented any evidence of actual innocence suggesting that no reasonable juror would have convicted him. Instead, Chippero relies merely on the unsupported, blanket assertion in his Petition: "There was no direct or circumstantial

evidence adduced at trial that could lead to an inference of guilt." (ECF No. 1 at 9.) Contrary to Chippero's contention, the record at trial was replete with evidence adduced against him, including: the testimony of his mother who gave the police Chippero's gray tee-shirt which she had just washed blood stains out of (ECF No. 22-1 at 47–48); his mother's and Dr. DeForest's testimony regarding the blood-stained shoelace from the Sneakers and the shoe imprint on the victim's back (*id.* at 49–50[7]); and McMenemy's sighting of Chippero outside Tocci's residence the day she was killed (*Id.* at 50[8]). Chippero's claim of "no circumstantial evidence" (ECF No. 1 at 9) therefore rings hollow.

---

[7] The State's summation was, in pertinent part:

> What Doctor DeForest did do however was to compare the two and he concluded that the right T-956 sneaker or another sneaker with similar characteristics made the bloody impression. And after searching various databases those similar outsole characteristics could be found, not in the local stores, not in the F.B.I. database, not in the databases from other footwear experts. Thousands of foot patterns were known. None of them matched or were similar to the T-956 sneakers. And ask yourself, what are the chances that the next door neighbor of a murder victim who is living there only a few weeks would own a pair of sneakers similar to that of the murderer and only the murderer could have left that impression? And who would have had such a similar pair of sneakers with evidence of blood on the sole and not be the murderer?

(ECF No. 22-1 at 50 (State's summation at the Second Trial).)

[8] The State's summation continued:

> Ladies and gentlemen, when I first addressed you almost a month ago I told you how witnesses in this case will describe pieces of circumstantial evidence that, when evaluated together and individually, point to the murderer of Ermina Rose Tocci, and the witnesses have done that. You have learned from their testimony that Richard Chippero was seen outside of 51 Poe Road at the time of the murder. You have learned from their testimony that Richard Chippero was absolutely identified as that person outside 51 Poe Road. You have learned from their testimony that Richard Chippero told his neighbors that the lady got stabbed before anyone else knew. You have learned from their testimony that Richard Chippero made a collect call to Kevin McMenemy on October 5th, 1991 to place the blame on John Simmons. And you have learned from their

In light of the absence of any evidence, let alone reliable new evidence, to support his assertions of innocence, Chippero has not presented a meritorious actual innocence claim. *See Calderon v. Thompson*, 523 U.S. 538, 559 (1998) ("To be credible, a claim of actual innocence must be based on reliable evidence not presented at trial. Given the rarity of such evidence, in virtually every case, the allegation of actual innocence has been summarily rejected." (internal quotation marks and citations omitted)).

## 2. <u>Weight / Sufficiency of the Evidence Claim</u>

On direct appeal, Chippero contended the trial court erred by denying his judgment of acquittal. The Appellate Division rejected this claim. (ECF No. 17-4 at 28.) In his PCR petition, Chippero challenged the weight of evidence against him only within the context of his actual innocence claim (ECF No. 18-1 at 19–25) and not as a freestanding sufficiency of the evidence claim. However, on appeal of denial of PCR, the PCR appellate court addressed the issue of weight of the evidence, deciding the "proofs adequately support[ed] the jury's verdict. Therefore, there was no miscarriage of justice." (ECF No. 17-4 at 13.) Whether or not Chippero's sufficiency of the evidence claim in Ground Three is exhausted or unexhausted, it must be denied on the merits for the following reasons.

A claim that the jury's verdict was against the weight of the evidence raises a due process

---

testimony that it was Richard Chippero's T-956 sneaker impression found on the back of Ermina Rose Tocci. There were no eye witnesses to the murder of Ermina Tocci. However, when you consider circumstantial evidence, which the witnesses have described, not speculation, not conjecture, not hypothesis but evidence, and consider the only reasonable inferences that can be drawn from that evidence, I submit you can only conclude that Richard Chippero raped and murdered Ermina Rose Tocci on July 23rd, 1991.

(ECF No. 22-1 at 50 (State's summation at the Second Trial).)

concern where, "after viewing the evidence in the light most favorable to the prosecution, [no] rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt" should the writ issue. *Jackson v. Virginia,* 443 U.S. 307, 319 (1979). This standard must be applied "with explicit reference to the elements of the criminal offense as defined by state law." *Id*. at 324, n.16; *see also Orban v. Vaughn,* 123 F.3d 727 (3d Cir. 1997), *cert. denied,* 522 U.S. 1059 (1998). In addition, state court factual determinations are presumed to be correct. *See Werts v. Vaughn,* 228 F .3d 178, 186 (3d Cir. 2000). "[I]t is the responsibility of the jury—not the court— to decide what conclusions should be drawn from evidence admitted at trial. A reviewing court may set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury." *Cavazos v. Smith,* 565 U.S. l, 2 (2011) (citing *Jackson v. Virginia,* 443 U.S. 307 (1979)). Furthermore, "a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was 'objectively unreasonable.'" *Id.* (citing *Renico,* 559 U.S. at 772 (internal quotation marks omitted)). Pursuant to *Jackson,* "evidence is sufficient to support a conviction so long as 'after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Cavazos,* 565 U.S. at 7 (quoting *Jackson*, 443 U.S. at 319). It also "instructs that a reviewing court 'faced with a record of historical facts that supports conflicting inferences must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution.'" *Id.* (quoting *Jackson*, 443 U.S. at 326). In addition, where the state court addressed the claim on the merits, the deference to state court decisions required by § 2254(d) is also applied to the state court's already deferential review. *See id.* at 7;

*see also Parker,* 567 U.S. at 43 (describing standard as "twice-deferential").

Here, having viewed the trial record in the light most favorable to the prosecution and with the appropriate deference to the state court decision, the Court finds a rational jury could find Chippero guilty beyond a reasonable doubt of the offenses charged if the jurors chose to believe McMenemy's testimony; to credit Dr. DeForest's analysis of the footprint evidence, the T-956 sneakers' blood-stained shoelace, and the shoe imprint on the victim's back; to discredit the accounts offered by the defense witnesses; and to find credible the testimony of Mary Giaquinto, Leonard Falabelda, and Barbara Traube. As such, Chippero has not shown the PCR appellate court's rejection of his sufficiency of the evidence claim was contrary to, or an unreasonable application of, United States Supreme Court precedent.

Therefore, Chippero is not entitled to habeas relief on either an actual innocence claim or a sufficiency of the evidence claim.

Accordingly, Ground Three is **DENIED**.

### D.  Ground Four: Claim of Trial Court Evidentiary Error

In the fourth ground of the Petition, Chippero argues "[t]he trial court erred by allowing a transparency to be used by Doctor DeForest during his testimony thereby denying him a fair trial and due process of law." (ECF No. 1 at 10.) Chippero supports his claim with the contention that "Dr. DeForest made a transparency from a sneaker seized from a room in Petitioner's house. The transparency was doctored and contorted to fit a possible print on the victim's shirt." (*Id*. at 11) (referred to as the "Evidentiary Error Claim").)

At trial, Dr. Peter DeForest testified for the State as an expert in criminalistics, specifically footwear impressions and blood spatters. He examined the crime scene photographs and blood stain patterns. Comparing an impression on the victim's back to the T-956 sneaker seized from

Chippero, Dr. DeForest opined the impression "was made by a shoe with the same outsole pattern." (ECF No. 17-4 at 15.) He concluded the impression was made by the right T-956 sneaker seized from Chippero's bedroom "or one of the same design." (*Id*.) At trial, Dr. DeForest used an overlay transparency of the impression. Dr. DeForest also repeatedly admitted that his opinion was limited because: (1) there was no scale in place to measure the impression because the imprint was not noticed at the time the crime scene was processed; (2) he did not have a high quality imprint that revealed the individual features of the sneaker, and there was too much blood; and (3) he was unable to find other T-956 sneakers for comparison. When explaining the use of the overlay, Dr. DeForest testified: "This [overlay] is not of particular importance here at all because . . . we don't have a size. We don't know what the actual size of the image in the photograph is." (*Id*. at 15–16.) On cross-examination, Dr. DeForest again admitted the limitations of his opinion and stated "[w]e're not saying that that particular shoe made that mark." (*Id*. at 16.)

On direct appeal, Chippero claimed Dr. DeForest should not have been permitted to use an overlay of the sneakers to explain his opinion. (ECF No. 12-2 at 66–70.) The New Jersey Appellate Division rejected this claim. (ECF No. 17-4 at 15–16.) Chippero raised this issue in his petition for certification (ECF No. 17-5), which was denied (ECF No. 18).

This Court finds Chippero's Evidentiary Error Claim does not merit habeas relief.

It is well-established that the violation of a right created by state law is not cognizable as a basis for federal habeas relief. *Estelle*, 502 U.S. at 67–68 ("We have stated many times that 'federal habeas corpus relief does not lie for errors of state law.'" (quoting *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990))). Accordingly, Chippero cannot obtain relief for any errors in state law evidentiary rulings, unless they rise to the level of a deprivation of due process. *Spencer v. Texas*, 385 U.S. 554, 563–64 (1967) ("[T]he Due Process Clause guarantees fundamental elements of fairness in a

criminal trial . . . ."); *accord Estelle*, 502 U.S. at 70. For a habeas petitioner to prevail on a claim that an evidentiary error amounted to a deprivation of due process, he must show that the error was so pervasive as to have denied him a fundamentally fair trial. *See Keller v. Larkins*, 251 F.3d 408, 413 (3d Cir. 2001).

Therefore, Chippero must show on habeas review that the challenged evidentiary rulings deprived him of due process. He cannot make such a showing. The state court properly considered the limitations of the sneaker overlay that Dr. DeForest used when testifying and determined that the evidence was admissible. Chippero has not shown such a determination was an error, much less that it was an error that was so pervasive as to have denied him a fundamentally fair trial. As the Appellate Division observed: "There is nothing inherently improper [under New Jersey law] in the use of demonstrative or illustrative evidence." (ECF No. 17-4 at 16.) In "this context" (*id.*) of (1) Dr. DeForest's direct testimony, (2) his admission on cross-examination of the overlay's limitations, and (3) the testimony of Chippero's mother who denied that the Sneakers belonged to him, this Court agrees with the Appellate Division that the trial judge "did not abuse his discretion in allowing the use of the overlay" (*Id*). Chippero cannot establish there was an error which denied him a fundamentally fair trial.

Accordingly, Ground Four is **DENIED**.

### E.  Ground Five: Claim of Ineffective Assistance of Trial Counsel

In his fifth ground for relief, Chippero argues he received ineffective assistance of counsel ("IAC") during the Second Trial in 2003. (ECF No. 1 at 12.) In his brief supporting the Petition, Chippero claims the trial counsel: (1) "failed to sufficiently argue for proper jury charges" that are the subject of Ground Two[9] of the Petition ("Instruction-IAC Claim"); (2) "failed to properly

---

[9] As noted *supra*, Ground Two of the Petition relates to these jury charges: (1) the Lesser-Included

advance Petitioner's actual innocence" ("Innocence-IAC Claim"); and (3) "failed to sufficiently object to expert testimony" about the sneakers ("Expert-IAC Claim"). (ECF No. 7 at 57–59.)

## 1. <u>Instruction-IAC Claim as to Lesser-Included Offense Charges</u>

In his PCR application, Chippero raised nine IAC claims, including arguing trial counsel failed to request lesser-included offense instructions. (ECF Nos. 18-1 at 15–16[10] and 19-2 at 4.) Chippero's amended PCR petition criticized his trial counsel as ineffective for failing to request a jury charge on aggravated manslaughter and reckless manslaughter. (ECF No. 18-3 at 2.) In PCR counsel's brief, Chippero's attorney argued that "according to petitioner," trial counsel failed to request lesser included offense instructions. (ECF No. 18-5 at 9.)

The PCR trial court denied the claim and observed the record showed "[i]t is abundantly clear that there were extensive arguments by defense counsel on that exact issue." (ECF No. 22-8 at 43–44.) Further, the PCR trial court noted "the Appellate Division [on Petitioner's direct appeal] [had] affirmed the trial court's reasoning for not granting the lesser-included charges of aggravated and reckless manslaughter." (*Id*.) Accordingly, the PCR trial court ruled: (1) the lesser-included charges issue was procedurally barred under New Jersey Rule of Court 3:22-4 as it was previously

---

Offense Charge; (2) the Credibility Charge; (3) the Motive Charge; (4) the Search Warrant Charge; and (5) the Entire Charge. Chippero's direct appeal in the Second Trial challenged each of these charges as confusing, misleading, and prejudicial. (ECF No. 12-2 at 2, 52–65.) His direct appeal claims relating to these jury charges were not asserted as ineffective assistance of counsel claims regarding those instructions. The Appellate Division rejected his claims of constitutionally deficient jury instructions. (ECF Nos. 16 and 17-4.)

[10] Chippero's other IAC claims in his PCR petition were: (1) trial counsel failed to adequately object to improper and misleading remarks "by an alleged expert"; (2) trial counsel failed to adequately object to qualifying Dr. DeForest as an expert in footwear; (3) trial counsel failed to have DeForest's testimony stricken from the record; (4) trial counsel failed to request "proper jury instructions" regarding Dr. DeForest's testimony; (5) trial counsel failed to bring to the trial court's attention the fact that some of the jurors were sleeping during the trial; (6) trial counsel failed to note on the record each time the trial court itself was "nodding off;" (7) trial counsel did not put the State's case to "any meaningful adversarial test;" and (8) the cumulative effect of these errors justified a new trial. (ECF No. 18-1 at 15–16.)

adjudicated; and (2) further, the IAC claim did not satisfy either prong of the *Strickland/Fritz* test. (ECF No. 22-8 at 43–44 ("[T]his issue does not satisfy the two-pronged test in *Strickland* that counsel did not act in accordance with the standards for competent, reasonable attorneys who are practicing criminal law. And the second prong, certainly, [as to] prejudice would not be supported by the evidence. [T]he petitioner's trial counsel and appellate counsel served the defendant effectively as it pertains to the lesser-included charges.").) The PCR appellate court affirmed substantially for the reasons set forth by the PCR trial court. (ECF No. 19-2 at 1, 4–5.) The New Jersey Supreme Court denied certification. (ECF No. 19-5.)

This Court finds Ground Five's Instruction-IAC Claim to be without merit.

The standard governing claims of ineffective assistance of counsel is well established, as set forth by the two-prong test of *Strickland v. Washington*, 466 U.S. 668 (1984). To support an IAC claim under *Strickland*, a petitioner must first show "counsel's performance was deficient. This requires [the petitioner to show] that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." *Id*. at 687; *see also United States v. Shedrick*, 493 F.3d 292, 299 (3d Cir. 2007). In evaluating whether counsel was deficient, the "proper standard for attorney performance is that of 'reasonably effective assistance.'" *Jacobs*, 395 F.3d at 102. A petitioner asserting ineffective assistance must show counsel's representation "fell below an objective standard of reasonableness" under the circumstances. *Id.* The reasonableness of counsel's representation must be determined based on the particular facts of a petitioner's case, viewed as of the time of the challenged conduct of counsel. *Id.* In scrutinizing counsel's performance, courts "must be highly deferential . . . a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689. A petitioner also must affirmatively demonstrate that

counsel's allegedly deficient performance prejudiced his defense such that the petitioner was "deprive[d] of a fair trial . . . whose result is reliable." *Strickland*, 466 U.S. at 687, 692–93; *Shedrick*, 493 F.3d at 299. "It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding." *Strickland*, 466 U.S. at 693. The petitioner must demonstrate "there is a reasonable probability, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694; *see also Shedrick*, 493 F.3d at 299.

"Because failure to satisfy either [*Strickland*] prong defeats an ineffective assistance claim, and because it is preferable to avoid passing judgment on counsel's performance when possible," courts should address the prejudice prong first where it is dispositive of a petitioner's claims. *United States v. Cross*, 308 F.3d 308, 315 (3d Cir. 2002) (quoting *Strickland*, 466 U.S. at 697–98).

When a federal habeas petition under § 2254 is based upon an IAC claim, "[t]he pivotal question is whether the state court's application of the *Strickland* standard was unreasonable," which "is different from asking whether defense counsel's performance fell below *Strickland*'s standard." *Grant v. Lockett*, 709 F.3d 224, 232 (3d Cir. 2013) (quoting *Harrington*, 562 U.S. at 101). For § 2254(d)(1) purposes, "an unreasonable application of federal law is different from an incorrect application of federal law." *Grant*, 709 F.3d at 232. "A state court must be granted a deference and latitude that are not in operation when the case involves [direct] review under the *Strickland* standard itself." *Id.* Federal habeas review of IAC claims is therefore "doubly deferential." *Id.* (quoting *Cullen*, 563 U.S. at 189). Federal habeas courts must "take a highly deferential look at counsel's performance" under *Strickland*, "through the deferential lens of § 2254(d)." *Grant*, 709 F.3d at 232.

Here, the PCR trial court's discussion of the Instruction-IAC Claim addressed both of

*Strickland*'s prongs claims: deficient performance and prejudice. (ECF No. 22-8 at 43–44.) *See also Jacobs*, 395 F.3d at 102 (the applicable standard is "reasonably effective assistance under the circumstances," as determined under the particular facts of each case, viewed as of the time of the challenged conduct of counsel). The state court's ruling was based upon the particular record in Chippero's case and made a reasonable application of the "performance" prong of the *Strickland* standard. Specifically, the PCR trial court ruled that trial counsel's performance was not deficient, in light of the fact that counsel *did*—contrary to Chippero's characterization of the facts— *expressly argue* at the charge conference in favor of giving the jury lesser-included offense charges. (*See* ECF No. 22 at 6, 12–14.) The PCR trial court also determined the record did not show there was a reasonable probability that the result of trial would have been different, but for trial counsel's performance as to the lesser-included offense instructions. (ECF No. 22-8 at 44.)[11]

Chippero has not demonstrated that the PCR trial court's ruling with regard to counsel's performance as to the lesser-included offense charge was contrary to, or involved an unreasonable application of, clearly established United States Supreme Court precedent, *see* 28 U.S.C. § 2254(d); *Parker*, 567 U.S. at 40 (quoting 28 U.S.C. § 2254(d)); *Williams*, 529 U.S. at 405–06; *see also Harrington*, 562 U.S. at 99; nor that the holding was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. *See Williams*, 529 U.S. at 413. In fact, it is clear—as the PCR trial court noted—that the record does not support the Instructions-IAC Claim in the first instance. Trial counsel *did* ask the judge to charge the jury on aggravated manslaughter, which was denied. (ECF No. 22 at 6, 12–14.)

_____

[11] As noted *supra*, evidence adduced against Chippero at trial included: the testimony of his mother (ECF No. 22-1 at 47–48); his mother's and Dr. DeForest's testimony regarding the bloody sneakers and the shoe imprint on the victim's back (*id*. at 49–50); and McMenemy's sighting of Chippero outside the victim's residence the day she was killed. (*Id*. at 50).

For these reasons, Chippero has not shown that the state courts' ruling on the Instruction-IAC Claim was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the United States Supreme Court.

Accordingly, Ground Five's Instruction-IAC Claim as to the lesser-included offense charge lacks merit and is **DENIED**.

### 2. Instruction-IAC Claim as to Credibility, Motive, Search Warrant, and Entire Charge Instructions

As noted *supra*, Chippero raised nine IAC claims in his PCR petition. (ECF Nos. 18-1 at 15–16 and 19-2 at 4.) None of the IAC claims raised in Chippero's original PCR Petition (ECF No. 18-1), his Amended PCR Petition (ECF No. 18-3), or his counsel's supporting brief (ECF No. 18-5) relate to trial counsel's performance regarding the credibility charge, motive charge, search warrant charge, or entire jury charge (collectively, "Non-PCR Charge Claims").[12] The Non-PCR Claims therefore appear to be unexhausted. However, this Court may, and does, find those Claims to be without merit.[13] 28 U.S.C. § 2254(b)(2); *Taylor*, 504 F.3d at 427; *Bronshtein*, 404 F.3d at 728.

The Non-PCR Charges themselves were constitutionally sufficient. First, this Court agrees with the written opinion of the Appellate Division from Chippero's direct appeal that the credibility charge explained the jury's proper role in examining prior inconsistent statements. This instruction, read together with the rest of the charge, adequately informed the jury of its function

---

[12] As noted *supra*, Ground Five of the Petition asserts that trial counsel "failed to sufficiently argue for proper jury charges" that are the subject of Ground Two of the Petition (ECF No. 7 at 57–59.) Ground Two of the Petition asserts claims related to these jury instructions: lesser-included offense charge, credibility charge, motive charge, search warrant charge, and entire charge.

[13] *See* Section V(B) of this Opinion for express provisions of the trial court's credibility charge, motive charge, search warrant charge, and entire jury charge.

in assessing and weighing credibility." (ECF No. 17-4 at 6.) Second, this Court cannot discern any constitutional violations wrought by the motive charge, as it merely stated basic principles of the parties' proofs at the criminal trial. Third, this Court agrees with the Appellate Division's direct appeal opinion that the search warrant charge "merely neutralized the evidence about the search warrant." (ECF No. 17-4 at 8.) Finally, Chippero has not shown that the entire jury charge was confusing, misleading, or prejudicial, as noted *supra* in Section V(B) of this Court's opinion. *See*, *e.g.*, *Estelle,* 502 U.S. at 73; *Williams,* 637 F.3d at 223.

Given that: the Non-PCR Charges themselves appear constitutional; the record does not support a finding that trial counsel was deficient with respect to those charges; Chippero does not, as he is required to do, identify the ways in which counsel's performance was allegedly deficient as to the Non-PCR Charges; and Chippero has not provided any arguments or evidence to demonstrate *Strickland* prejudice as to the Non-PCR Charges, Ground Five does not merit habeas relief. Considering the proofs adduced against Chippero at trial, the record does not demonstrate that counsel's performance was deficient and was prejudicial to Chippero's defense such that he was "deprive[d] of a fair trial . . . whose result is reliable." *Strickland*, 466 U.S. at 687, 692–93; *Shedrick*, 493 F.3d at 299. Therefore, Ground Five's Instruction-IAC Claim as to Non-PCR Charges is without merit, even if not procedurally defaulted under 28 U.S.C. § 2254(b)(1).

Accordingly, the Instruction-IAC Claim in Ground Five is **DENIED**.

### 3. Innocence-IAC Claim

In his PCR petition, Chippero advanced a claim of actual innocence (ECF No. 22-8 at 16–25) but did not allege in either his original or amended PCR petitions that his trial counsel was ineffective for not advancing an actual innocence claim (*See id*. at 15–16; ECF Nos. 18-3 at 2 and 18-5 at 9–13, 16). The PCR trial court rejected Chippero's actual innocence claim because "any

argument relative to the reconsideration of that [trial] evidence, without any corroboration, in addition to what is already in the record, is just bald-faced assertions." (ECF No. 22-8 at 47.) The PCR appellate court affirmed, substantially for the reasons set forth by the PCR trial court. (ECF No. 19-2 at 1, 7.)

Given that Chippero did not assert an IAC claim as to counsel's failure to allege actual innocence, the Innocence-IAC Claim appears to be unexhausted since it was not raised before the state courts. However, this Court may, and does, find the Innocence IAC-Claim to be without merit. 28 U.S.C. § 2254(b)(2); *Taylor*, 504 F.3d at 427; *Bronshtein*, 404 F.3d at 728.

First, in support of his Innocence-IAC Claim, Chippero alleges only that "[t]rial counsel failed to bring to the state court's attention the compelling reasons why petitioner is actually innocent and, at the very least the verdict was against the weight of the evidence." *See* Ground Three; (ECF No. 7 at 57.) Not only is this contention the sort of "bald-faced assertion without merit" the PCR trial court criticized (ECF No. 22-8 at 47), but it also fails to demonstrate either of the requisite *Strickland* prongs for IAC claims in these respects: (1) Chippero has not described, much less shown, how trial counsel's performance was deficient. Contrary to Chippero's contentions, his trial counsel *did* argue that he "did not do it. He did not commit these offenses" (ECF No. 22-1 at 6) and *did* advance arguments that the evidence supported innocence (*Id*. at 6– 35); and (2) Chippero has not shown how any specific purported instances of deficient performance in fact prejudiced him such that the outcome of trial would have been different if counsel had performed differently. The well-established two-prong *Strickland* test requires satisfaction of both components for an IAC claim: deficient performance and prejudice. Here, Chippero has demonstrated neither. "[F]ailure to satisfy either prong defeats an ineffective assistance claim." *Strickland*, 466 U.S. at 697–98. Therefore, Ground Five's Innocence-IAC Claim

is without merit.

Second, even if this Court were to liberally construe the Innocence-IAC Claim in Ground Five as a stand-alone actual innocence claim, that claim still fails. As this Court noted *supra* in discussion of Ground Three, a habeas petitioner alleging a claim of actual innocence must come forward with "new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Schlup v. Delo,* 513 U.S. 298, 324, 115 S.Ct. 851, 865 (1995). The petitioner must then demonstrate that, "in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." *Sweger v. Chesney,* 294 F.3d 506, 522 (3d Cir. 2002) (quotation omitted). Here however, Chippero's habeas arguments in support of actual innocence in Ground Five are confined exclusively to a re-hashing of evidence from the Second Trial and Chippero's efforts to re-litigate the conclusions to be drawn from those proofs. (ECF No. 7 at 39–55.[14]) Chippero has not demonstrated any new evidence that was not presented at trial, let alone demonstrated that in light of such evidence, no juror acting reasonably, would have voted to find him guilty beyond a reasonable doubt. Chippero has not shown that the Appellate Division's opinion upholding the PCR trial court's ruling with regard to his actual innocence claim was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the United States

---

[14] Stating:

> John Simmons was no doubt the real killer. The evidence against John Simmons, the victim's live-in boyfriend, is far in excess of any evidence against petitioner . . . . Furthermore, the only physical evidence against petitioner . . . was the false and misleading sneaker overlay demonstration . . . . The instant matter is a text book case of insufficient evidence to support a conviction . . . . [T]here was no testimony, no physical evidence, no evidence whatsoever that could possibly lead to a reasonable inference that Defendant committed these crimes.

(ECF No. 7 at 39–55.)

Supreme Court. Therefore, Ground Five's Innocence-IAC Claim is without merit, even if construed as a stand-alone actual innocence claim.

Accordingly, the Innocence-IAC claim in Ground Five is **DENIED**.

### 4. Testimony-IAC Claim

In his PCR petition, Chippero raised nine IAC claims, including: (1) trial counsel failed to adequately object to improper and misleading remarks "by an alleged expert"; (2) trial counsel failed to adequately object to qualifying Dr. DeForest as an expert in footwear; (3) trial counsel failed to have Dr. DeForest's testimony stricken from the record; and (4) trial counsel failed to request "proper jury instructions" regarding Dr. DeForest's testimony. (ECF No. 18-1 at 15–16.) Chippero's amended PCR petition claimed IAC by trial counsel for "failing to object to DeForest's testimony." (ECF No. 18-3 at 2.) In PCR counsel's brief, Chippero's attorney argued the same. (ECF No. 18-5 at 12–13.) The PCR trial court rejected the Testimony-IAC Claim for failure to satisfy *Strickland*'s deficient performance prong:

> I find that that supposition is not supported by the record. Trial counsel objected numerous times, in the form of multiple motions, in an attempt to disqualify Dr. DeForest. Defendant's attorney attempted in three ways to preclude the testimony from DeForest. [D]efendant's attorney moved to suppress the sneakers [as] irrelevant. And Judge Paley said that the sneakers were relevant.
>
> Then, Mr. Venturi added another motion to exclude Dr. DeForest because he was not an expert for the purpose of providing footwear impressions. Judge Paley denied his motion in limine to exclude Dr. DeForest's expertise as to the shoeprint. And finally, there was an attempt by the defendant's counsel to preclude the prosecution from using the transparency to present the sneaker overlay to the jury. Again, that motion was heard and denied.
>
> And all of those motions were denied after detailed arguments, strenuous arguments, made by both defense attorney Jack Venturi and by the prosecutor. So it is clear to me that the petitioner's attorney, although unsuccessful, served his client effectively

> repeatedly in an effort to suppress the testimony. And his failure
> does not make his actions incompetent.

(ECF Nos. 22-8 at 44–46 and 22-8 at 16–17.) The PCR appellate court affirmed for the reasons set forth by the PCR trial court. (ECF No. 19-2 at 1, 5–6.)

Chippero's Testimony-IAC Claim in the Petition fails to demonstrate *Strickland*'s deficient performance prong for IAC claims.

As noted by both the PCR trial and PCR appellate courts, Chippero did not identify any defective representation by trial counsel. Contrary to Chippero's contentions, his trial counsel *did* argue against Dr. DeForest's qualification as an expert, against his testimony at trial about the sneakers, and against his sneaker transparency. (ECF No. 22-8 at 44–46.)

Chippero therefore has not established one of *Strickland*'s two requisite prongs for an IAC claim. *See Strickland*, 466 U.S. at 697–98. The Appellate Division's decision affirming the PCR trial court's decision is therefore neither contrary to, nor an unreasonable application of, United States Supreme Court precedent. Therefore, Ground Five's Testimony-IAC Claim is without merit.

Accordingly, the Instruction-IAC Claim, the Innocence-IAC Claim, and the Testimony-IAC Claim are without merit.

Accordingly, Ground Five is **DENIED**.

### F. Ground Six: Claim of Ineffective Assistance of Appellate Counsel

Ground Six of the Petition alleges IAC by appellate counsel ("Appellate-IAC Claim"). (ECF No. 1 at 13.[15])

---

[15] Ground Six of the Petition alleges IAC by appellate counsel, and Ground Seven seeks an evidentiary hearing. (ECF No. 1 at 13–14.) Ground Six of Chippero's Brief in Support of Petition addresses his evidentiary hearing request and does not address claims of appellate counsel IAC. (ECF No. 7 at 60–61.)

In his PCR application, Chippero made a general claim of IAC of appellate counsel. (ECF No. 18-1 at 6, 14–16 (claiming on direct appeal, appellate counsel "failed to raise obvious issues of trial error").) The amended PCR petition faulted appellate counsel with "failing to brief the above-mentioned issues [as to the lesser-included offense jury charge and Dr. DeForest's testimony]." (ECF No. 18-3 at 2.) PCR counsel's brief argued the same. (ECF No. 18-5 at 6–13, 17–18.) The PCR trial court rejected the Appellate-IAC Claim:

> Although counsel can choose to raise all points possible, he runs the risk of bu[r]ying the defendant's strongest claims. So it is a matter of judgement to be used by counsel as to what to raise and what not to raise . . . .
>
> . . .
>
> Now, the Court has to consider the defendant's assertion that both trial counsel and appellate counsel were ineffective because they did not object to Dr. DeForest's testimony. Here again, I find that that supposition is not supported by the record . . . [T]he issue of Dr. DeForest's testimony was brought before the Appellate Division in two trips to the Appellate Division, both in 1999 and in 2010. Both times, the Appellate Division determined that there was no basis to overturn the trial judge's wide discretion as it pertains to admissibility of this testimony and the demonstrative evidence that was presented to the jury . . . . [T]he petitioner cannot make a prima facie case that but for counsel's alleged ineffectiveness, the outcome would have been different, because this has already been reviewed extensively and in this Court's opinion, appropriately, by both trial and appellate review.

(ECF No. 22-8 at 41, 44–47.) The PCR appellate court affirmed, substantially for the reasons set forth by the PCR trial court. (ECF No. 19-2 at 1, 6–7.)

This Court agrees with the state courts that Chippero does not meet *Strickland*'s standard for demonstrating IAC by appellate counsel.

As to lesser-included offense charges, appellate counsel on direct appeal *did* challenge the trial judge's ruling to deny the requested charges. (ECF Nos. 12-2 at 52–54 and 18-6 at 22.) The

Appellate Division rejected Chippero's claim. (ECF No. 17-4 at 2–5 ("[W]e conclude that the judge correctly determined that the trial record, viewed as a whole, did not support giving to the jury the lesser-included charges as aggravated and reckless manslaughter.").) As to the Dr. DeForest testimony at trial, appellate counsel briefed this issue as well. (ECF No. 12-2 at 2, 66–70.) Therefore, appellate counsel *did* in fact perform as Chippero contends he should have.

Consequently, Chippero has not shown that counsel failed to perform, much less that such failure was deficient under *Strickland*. In fact, given that the Appellate Division had rejected Chippero's challenge to Dr. DeForest's expert qualification and testimony in the First Trial (ECF No. 11-2 at 3–4, 24), the likelihood of the Appellate Division reversing itself on those same issues in the Second Trial was minimal, at best. Furthermore, given that trial courts retain broad discretion under New Jersey law to decide the qualifications of experts and the reliability of their opinions,[16] the likelihood of success of an appellate argument about Dr. DeForest was highly debatable. The PCR trial court recognized this point. (ECF No. 22-8 at 40–41 ("Although counsel can choose to raise all points possible, he runs the risk of bu[r]ying the defendant's strongest claims.") ("Appellate counsel's under no constitutional obligation to pursue every non-frivolous point requested by a defendant if, as a matter of professional judgement, he or she decides not to pursue the point.")); *see United States v. Travillion*, 759 F.3d 281, 289 (3d Cir. 2014) (noting that, on habeas review, courts "must indulge a strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance") (quoting *Strickland*, 466 U.S. at 689; *Berryman v. Morton,* 100 F.3d 1089, 1094 (3d Cir. 1996). Chippero has not demonstrated, given all the circumstances, any supposed mistake by counsel "was so egregious that it fell 'outside the wide range of professionally competent assistance.'" *Branch v. Sweeney*, 758 F.3d 226, 234–35 (3d Cir.

---

[16] *State v. Kelly*, 478 A.2d 364, 382 (1984).

2014) (citations omitted).

Chippero therefore has not demonstrated *Strickland*'s first prong of deficient performance for IAC by appellate counsel as to lesser-included offense charges or as to Dr. DeForest's testimony at trial.

Accordingly, Ground Six is **DENIED**.

### G. Ground Seven: Claim That Chippero is Entitled to an Evidentiary Hearing

Finally, Chippero argues in Ground Seven he "should receive an evidentiary hearing" as to "numerous attempts . . . the state courts refused [him] . . . to obtain a hearing on the admissibility of the dubious footprint evidence . . . [which] was the most damaging evidence against petitioner. If [Chippero] was afforded an evidentiary hearing in the state courts the junk science used by the prosecutor would have come to light." (ECF Nos. 1 at 14 and 7 at 60 (referred to as "Footprint Admissibility Claim").)

In *Cullen v. Pinholster*, 131 S. Ct. 1388 (2011), the United States Supreme Court held where a § 2254 petitioner's claim was adjudicated on the merits in state court proceedings,

> review under [28 U.S.C.] § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits . . . . This backward-looking language requires an examination of the state-court decision at the time it was made. It follows that the record under review is limited to the record in existence at that same time—*i.e.*, the record before the state court.

*Id.* at 1398. As the federal habeas scheme leaves "primary responsibility" with the state courts, "[i]t would be contrary to that purpose to allow a petitioner to overcome an adverse state-court decision with new evidence introduced in a federal habeas court and reviewed by that court in the first instance." *Id.* at 1399. The *Cullen* Court held "evidence introduced in federal court has no bearing on § 2254(d)(1) review. If a claim has been adjudicated on the merits by a state court, a federal habeas petitioner must overcome the limitation of § 2254(d)(1) on the record that was

before that state court." *Id.* at 1400. In this case, the New Jersey courts adjudicated Chippero's Footprint Admissibility Claim during trial, on direct appeal, and in PCR proceedings. (ECF Nos. 12-2 at 66–70; 17-4 at 15–16; 19-2 at 1, 5–6; and 22-8 at 16–17, 44–46.) The *Cullen* opinion therefore confines habeas review of Chippero's Footprint Admissibility Claim to only the evidence in the record before the state courts.

Section § 2254(e)(2), which controls whether a habeas petitioner may receive an evidentiary hearing in federal district court on claims that were not developed in state courts, does not alter this conclusion. Section 2254(e)(2) provides as follows:

> If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that—
> (A) the claim relies on—(i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and
> (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

28 U.S.C. § 2254(e)(2). By the terms of its opening clause, the statute applies only to prisoners who have "failed to develop the factual basis of a claim in State court proceedings." If the prisoner has failed to develop the facts, an evidentiary hearing cannot be granted unless the prisoner's case meets the other conditions of § 2254(e)(2). In *Williams v. Taylor*, 529 U.S. 420 (2000), the United States Supreme Court held that under § 2254(e)(2), a "fail[ure] to develop" a claim's factual basis in state court proceedings is not established unless there is lack of diligence, or some greater fault, attributable to the prisoner or his counsel. If a petitioner fails to develop the factual basis of a claim in state court, this Court cannot hold an evidentiary hearing. 28 U.S.C. § 2254(e)(2). Given that state courts have a duty to vindicate rights secured by the Constitution in state criminal

proceedings, the state courts should have the first opportunity to review the claim and provide any necessary relief. *Williams*, 529 U.S. at 436–37 (citing *O'Sullivan,* 526 U.S. at 844).

In order for a petitioner to have this opportunity to adjudicate federal rights, a prisoner must therefore be diligent in developing the record and presenting all claims of constitutional error. *Id.* Diligence requires that a prisoner make a reasonable attempt to investigate and pursue the claims in state court, and diligence does not depend on whether these efforts could have been successful. *Id.* at 435. At a minimum, a petitioner must seek an evidentiary hearing in state court in the manner proscribed by state law. *Id.* at 437. However, where a petitioner has diligently sought to develop the factual basis of a claim in state court and the court fails to resolve a factual issue on which the habeas petition rests, an evidentiary hearing is not barred under 28 U.S.C. § 2554(e). *Campbell v. Vaughn,* 209 F.3d 280, 286 (3d Cir. 2000).

An applicant who fails to develop the factual basis of a claim is barred from an evidentiary hearing unless the statute's other stringent requirements are met. Under 28 U.S.C. § 2554(e)(2), a district court can hold an evidentiary hearing even if the petitioner failed to develop the factual basis of a claim if it relies on a new rule of constitutional law or a factual predicate that could not have been previously discovered through due diligence. Additionally, the facts underlying the claim should be sufficient to establish by clear and convincing evidence "that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense." 28 U.S.C. § 2554(e)(2)(B).

In this case, Chippero's trial counsel: argued against Dr. DeForest's qualification as an expert, objected to Dr. DeForest's trial testimony about the sneakers, and objected to Dr. DeForest's sneaker transparency. (ECF No. 22-8 at 16–17, 44–46.)

On direct appeal, Chippero claimed Dr. DeForest should not have been permitted to use an overlay of the sneakers to explain his opinion. (ECF No. 12-2 at 66–70.) The New Jersey Appellate Division rejected this claim. (ECF No. 17-4 at 15–16.) Chippero raised this issue in his petition for certification (ECF No. 17-5), which was denied (ECF No. 18).

Chippero's PCR petition sought, *inter alia*, "an evidentiary hearing on this matter . . . [as to] defense counsel's ineffective assistance." (ECF No. 18-1 at 26.) The PCR trial court rejected Chippero's claim for an evidentiary hearing. (ECF No. 22-8 at 47.) The PCR appellate court affirmed. (ECF No. 19-2 at 6–7.)

If there was any issue to explore as to "the admissibility of the dubious footprint evidence" such as Chippero alleges in the Petition (ECF No. 7 at 60), he had every opportunity to do so, not only at his Second Trial, but also on collateral review in state court. Since Chippero failed to develop the factual basis of his Footprint Admissibility Claim in a state court proceeding and does not allege that his claim relies on a new rule of constitutional law or factual predicate, this Court is barred from holding an evidentiary hearing under 28 U.S.C. § 2554(e)(2).

Furthermore, given that Grounds One through Six of the Petition are denied on the merits for the reasons explained at length in this Opinion, there is no basis for an evidentiary hearing on them.

Accordingly, Ground Seven of the Petition is **DENIED**.

## V. CERTIFICATE OF APPEALABILITY

Pursuant to 28 U.S.C. § 2253(c), unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken from a final order in a proceeding under 28 U.S.C. § 2254. A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. 2253(c)(2). "A petitioner satisfies this

standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).

Here, Chippero has failed to make a substantial showing of the denial of a constitutional right.

Accordingly, the certificate of appealability is **DENIED**.

## VI.    CONCLUSION

For the foregoing reasons, the § 2254 habeas petition is **DENIED**, and Chippero is **DENIED** a certificate of appealability. An appropriate Order will follow.

**Date:** January 14, 2020                     */s/Brian R. Martinotti*
                                               **HON. BRIAN R. MARTINOTTI**
                                               **UNITED STATES DISTRICT JUDGE**